IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED FOOD AND COMMERCIAL WORKERS UNION, LOCAL No. 227, *et al.*  Plaintiffs, v.  UNITED STATES DEPARTMENT OF AGRICULTURE,  Defendant. | Case No. 1:20-cv-02045 |

## DECLARATION OF PAUL KIECKER

I, Paul Kiecker, hereby declare and certify as follows:

1.  I am the Administrator for the U.S. Department of Agriculture's Food Safety and Inspection Service (FSIS). I have held this position since March, 2020. In this role, I spearhead the planning and implementation of FSIS' Strategic Goals of: preventing foodborne illness and protecting public health; modernizing inspection systems, policies and use of scientific approaches; and achieving operational excellence.

2.  Since 1988, I have held various positions within FSIS. I joined FSIS as a Food Inspector. I then served as Deputy District Manager in Madison, Wisconsin; District Manager in Madison, Wisconsin; and District Manager in Springdale, Arkansas. I later moved to Washington, D.C. to serve as Executive Associate for Regulatory Operations and, subsequently, Deputy Assistant Administrator for the Office of Field Operations.

3.  From August 2017 through January 2019, I served as the Acting FSIS Administrator, and from January 2019 through March 2020, I served as the FSIS Deputy Administrator. In these roles, I oversaw the modernization of the Agency's slaughter inspection

systems for both poultry and swine.  For poultry, the modernized inspection system is called the New Poultry Inspection System (NPIS); for swine, the modernized inspection system is called the New Swine Slaughter Inspection System (NSIS).

4. On August 21, 2014, FSIS issued a final rule establishing NPIS. *See* Modernization of Poultry Slaughter Inspection, 79 Fed. Reg. 49,566 (Aug. 21, 2014).  NPIS is a poultry inspection system designed to facilitate pathogen reduction in poultry products by prioritizing Agency resources to allow FSIS inspectors to perform more offline inspection activities that are more effective in ensuring food safety, while providing for a more efficient and effective online carcass-by-carcass inspection. Poultry establishments subject to inspection by FSIS may choose to operate under the NPIS or may continue operating under the pre-existing inspection system.

5. The NPIS regulation provides for a maximum evisceration line speed of 140 birds per minute ("bpm").  In 2018, FSIS issued a constituent update, and subsequently a notice in the *Federal Register*, announcing criteria for NPIS establishments to apply for waivers to the line-speed limitation, pursuant to 9 C.F.R. § 381.3(b), to enable the Agency to collect data to inform a possible future rulemaking.  From October, 2018, to April, 2020, FSIS granted 53 applications for waivers allowing qualifying NPIS establishments to operate at line speeds up to 175 bpm.

6. On October 1, 2019, FSIS issued a final rule establishing NSIS. *See* Modernization of Swine Slaughter Inspection, 84 Fed. Reg. 52,300, 52,314 (Oct. 1, 2019). Similar in many ways to NPIS, NSIS is an optional swine inspection system that allows FSIS inspectors to be presented with presorted animals and carcasses that have defects identified, which results in a more efficient inspection of each animal and each carcass. The Agency is able to assign fewer FSIS inspectors to online inspection in NSIS establishments, freeing up Agency

resources to conduct more offline inspection activities that are more effective in ensuring food safety and humane handling requirements.

7. Prior to the finalization of the NSIS rule in October, 2019, swine slaughter establishments were subject to an evisceration line speed limit of 1,106 head per hour. NSIS removed that line speed limitation for participating establishments, provided that they maintained process control and that inspectors were able to maintain proper inspection. *Id.* However, a March 31, 2021 court order issued by the U.S. District Court for the District of Minnesota vacated the unlimited line speed portion of the regulation, holding that USDA did not give adequate consideration to issues of worker safety in removing the line speed limitation. *See United Food & Commercial Workers Union, Local No. 663 v. USDA*, --- F. Supp. 3d ---, 2021 WL 1215865, at *1 (D. Minn. March 31, 2021). As a result, since that order become effective on June 30, 2021, all NSIS establishments were again capped at line speeds of 1,106 head per hour.

8. In June, 2021, FSIS, received applications from several swine establishments for waivers allowing them to operate at line speeds in excess of 1,106 head per hour, one of which included an agreement between the establishment and the union representing its workers addressing the establishment's plans for ensuring a safe working environment at higher line speeds. FSIS consulted extensively with the Occupational Safety and Health Administration ("OSHA") in determining how to respond to the applications. FSIS ultimately decided to invite all NSIS establishments to submit applications to conduct Time-Limited Trials experimenting with ergonomics, automation, and crewing to create custom work environments that will protect food and worker safety while increasing productivity, pursuant to 9 C.F.R. 303.1(h). Applications are reviewed by FSIS on a case-by-case basis. Additionally, all labor-management

agreements and worker-safety data-collection plans will be reviewed by the appropriate OSHA Regional Administrator.

9. On November 10, 2021, FSIS invited each swine slaughter establishment operating under NSIS to submit an application to participate in such a Time Limited Trial. A true and correct copy of the template letter that FSIS sent to each NSIS establishment is attached as Exhibit A to this Declaration.[1]

10. NSIS establishments that are approved on a case-by-case basis to participate in a Time-Limited Trial will be permitted to operate at an increased line speed for a period of up to one year during which time they will collect data that measures the impact of line speed on worker health and safety. That data will be used to inform any future rulemaking regarding NSIS, and will also be shared with OSHA.

11. In light of the announcement of applications to participate in the Time-Limited Trials for certain establishments operating under NSIS, FSIS intends to reconsider the NPIS line speed waivers that are currently in operation. FSIS intends to take into account its actions under NSIS in deciding whether those waivers should continue or whether those waivers should be terminated or modified.

12. The application process for Time-Limited Trials for NSIS establishments has taken seven months to develop because it involves extensive coordination between FSIS and OSHA, as well as between processing facilities and their unions. USDA envisions a similar process for reconsidering the existing NPIS waivers, and expects to be able to complete that process in 6 months. During that 6-month period, the Agency anticipates examining, among

---

[1] The November 12, 2021, Constituent Update announcing the Time Limited Trials is available at https://www.fsis.usda.gov/news-events/news-press-releases/constituent-update-november-12-2021 (last visited Nov. 23, 2021).

other things, the similarities and differences between implementing Time-Limited Trials in eligible poultry establishments versus swine establishments, options for data collection and analysis, the impact of any revision or withdrawal of the waivers on the facilities that currently operate under waivers, and the potential for collaboration with OSHA to address worker health and safety.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: November 23, 2021

_____
Paul Kiecker
FSIS Administrator

# EXHIBIT A



**United States Department of Agriculture**

Food Safety and
Inspection Service

1400 Independence
Avenue, SW,
Washington, D.C.
20250

November 10, 2021

Dear ▒▒▒▒▒▒▒▒:

As you are aware, on March 31, 2021, the U.S. District Court for the District of Minnesota found that USDA violated the Administrative Procedure Act by eliminating line speed limits in its New Swine Slaughter Inspection System (NSIS) Final Rule without meaningfully considering comments on how this could impact worker safety. The judge vacated the NSIS Final Rule only insofar as it eliminated line speed limits for establishments operating under NSIS. When the Court's Order went into effect on June 30, 2021, all NSIS establishments were required to operate at evisceration line speeds that do not exceed 1,106 head per hour (hph) (the maximum inspection rate with heads attached allowed under existing regulations for traditional swine inspection).

After consulting with the Occupational Safety and Health Administration (OSHA), FSIS has decided to invite existing NSIS establishments to apply for a time-limited trial that would allow them to operate at an increased evisceration line speed for a period of up to 12 months. The time-limited trial is intended to facilitate experimentation with different ergonomics, automation, and crewing to design custom work environments that increase productivity and protect food safety while, at the same time, decreasing the probability of worker injuries. It would also allow FSIS to collect data to share with OSHA, which could inform a future rulemaking in this area.

If your establishment would like to participate in the time-limited trial, you would need to implement worker safety measures included in an agreement with the workers' union or worker safety committee that represents your employees. Your application should include the mechanism by which your establishment would collect data that measure the impact of line speed on workers.

FSIS is interested in receiving requests for time-limited trials from NSIS establishments that:

- Have been operating under the NSIS for at least 120 days and have followed all NSIS requirements during that time; have demonstrated a history of regulatory compliance (i.e., the establishment has not received a public health alert for the last 120 days); have not had an enforcement action as a result of a Food Safety Assessment conducted in the last 120 days; have not received an enforcement

- action for humane handling in the last 120 days; and have not been the subject of a public health related enforcement action in the last 120 days; and

- Have not received an OSHA citation in the prior three years, are not the subject of a current OSHA inspection, and are not currently contesting any OSHA citation.

FSIS recommends that any request for a time-limited trial include:

- A fully executed agreement related to worker safety with a union or worker safety committee, particularly an agreement that meets the requirements of a certified health and safety management system like OSHA's Voluntary Protection Programs (VPP), ISO 45001, or American National Standards Institute ANSI Z10 (if/when certification for ANSI Z10 is available).
- Detailed information about safety protocols and line configurations.
- Details about the establishment's Hazard Analysis and Critical Control Point (HACCP) plan.
- Information about how the establishment maintains process control, including one year of microbial data, methodology for evaluating that microbial data (e.g., upper and lower control limits), correlation of that microbial data to the establishment's sanitary dressing process control data, correlation of that microbial data to FSIS' *Salmonella* data and interventions to address seasonality.
- Information on how the establishment will maintain or improve food safety while operating at higher line speeds.
- Information on the type of records that will be maintained that will assist FSIS in performing appropriate rulemaking analysis (e.g., laboratory results, weekly or monthly summary production reports).
- Information on the type of records that will be maintained related to worker safety (e.g., past and future establishment employee injury numbers from employee reports of symptoms, OSHA logs and workers' compensation reports, recordable rates, time and motion study data, and data on injury type, root cause analysis, implementation of controls, and line location). In addition, information related to leading and lagging metrics for worker safety should be maintained. Lagging metrics are: trends in the numbers and rates for injuries reportable on OSHA Form 300 (location, cause, area of the body), workers compensation reports, first aid reports, employee turnover, and results

Page 3

of root cause analyses performed for those injuries with a focus on engineering controls. Leading metrics are: symptom surveys; updated job hazard analyses including ergonomics (i.e., quantitative measures of hazard assessment, including strain index, National Institute for Occupational Safety and Health (NIOSH) lift equation, Liberty Mutual push/pull/carry tables, American Conference of Governmental Industrial Hygienists (ACGIH) hand activity Threshold Limit Value (TLV), upper limb localized fatigue TLV); and amputation hazards (e.g., machine pinching, knife and saw use); regular meetings of the safety and health teams that identify/and control hazards (mostly through engineering controls) and employee training in hazard identification/control and recognition of symptoms; periodic (at least annual) safety audits that include interviews with employees and supervisors; tracking of safety recommendations and whether they lead to controls; and assessment of the medical unit, as well as training, licensing and scope of practices to ensure staff have the appropriate skill level, professional scope of practice, and supervision, together with adequate infrastructure available in the first aid stations or employee/medical clinics, recordkeeping staff responsible for relevant recordkeeping that can manage appropriate OSHA documentation and clinician decisions being made independent of recordability.

- A description of policies designed to ensure that no one, including companies and third-party contractors, discriminates or takes adverse action against any worker or other person who raises a concern about meatpacking operation safety practices or hazards to the employer, the employer's agent, other workers, a government agency, or to the public, including through print, online, or social media.
- A description of policies designed to ensure that no policies, programs, or procedures are in place or implemented during the period of the time-limited trial that discourage or penalize the reporting of injuries or illness by workers to their employer.

Consistent with existing policy, if an establishment is granted the time-limited trial, FSIS would require establishments to notify the FSIS inspector-in-charge (IIC) when they are operating at evisceration line speeds higher than 1,106 hph to allow FSIS to evaluate the establishment's ability to maintain process control at a given line speed. In addition, FSIS would require that establishments submit information on their intended maximum line speed.

Page 4

If your establishment is interested in applying for the time-limited trial, please submit your request through askFSIS. Applications will be reviewed by FSIS on a case-by-case basis under 9 CFR 303.1(h); this notification does not entitle any NSIS establishment to obtain authorization for a time-limited trial. Additionally, all labor-management agreements and worker safety data-collection plans will be reviewed by the appropriate OSHA Regional Administrator.

Sincerely,

Rachel Edelstein
Assistant Administrator
Office of Policy and Program Development